Filed 2/10/26  P. v. Superior Court (Small) CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Petitioner, | E086768 |
| v. | (Super.Ct.No. SWF021505) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| JAMES LEON SMALL, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  John M. Monterosso, Judge.  Petition denied.

Michael Hestrin, District Attorney, Matthew Murray and Kent M. Walters, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

1

Steven L. Harmon, Public Defender and Joseph J. Martinez, Deputy Public Defender, for Real Party in Interest.

The discovery provision of the California Racial Justice Act of 2020 (RJA) (Stats.2020, ch. 317, § 1) requires a trial court to order "all evidence relevant to a potential violation of subdivision (a) in the possession or control of the state" released to a criminal defendant "[u]pon a showing of good cause." (Pen. Code, § 745, subd. (d) (section 745(d)); unlabeled statutory references are to this code.)

In 2023, the trial court recalled the sentence of James Leon Small under section 1172.75. While Small was awaiting resentencing, he moved for disclosure of information from the Riverside County District Attorney, alleging a potential violation of subdivision (a)(3) of section 745 (section 745(a)(3)), that is, racial disparity in seeking or obtaining convictions or imposing sentences in Riverside County for the offenses of which Small was convicted. The trial court granted the motion and ordered the district attorney to disclose responsive information for the five-year period in which Small was charged, convicted, and sentenced.

The district attorney subsequently moved for reconsideration. The trial court denied the motion in part and granted it in part. The court rejected the district attorney's invitation to reconsider its finding that Small had established good cause for disclosure, but the court limited the amount of information that the district attorney had to provide.

The district attorney filed a petition for writ of mandate, challenging the trial court's finding of good cause under section 745(d) and its failure to compel the public defender's office to search its own records before ordering disclosure from the district attorney. We deny the petition.

BACKGROUND

I.      *The conviction*

Small is African American.[1] In June 2007, a felony complaint was filed against him in Riverside County. In March 2010, a jury convicted him of numerous sexual offenses committed against his former girlfriend's daughter, including one count of rape of a child under age 14 (§ 269, subd. (a)(1)), one count of forcible lewd and lascivious conduct against a minor under age 14 (§ 288, subd. (b)(1)), and a total of eight counts of lewd and lascivious conduct against a child under age 14 or 16 (*id.*, subds. (a), (c)(1)). (*People v. Small* (June 30, 2011, E050735) [nonpub. opn.].) Small admitted that he served one prior prison term under former section 667.5, subdivision (b). (*People v. Small*, E050735.) In April 2010, the trial court sentenced Small to an aggregate term of 39 years four months in state prison, which included a one-year term for the prior prison term enhancement. We affirmed the judgment in an unpublished opinion. (*People v. Small*, E050735.)

---

[1]     Small's motion does not contain any information identifying his race, so we take judicial notice of the record from Small's direct appeal on our own motion. (Evid. Code, §§ 452, subd. (d), 459, subd. (d).) We provided the parties the requisite notice under Evidence Code section 459, subdivision (d), in a tentative opinion, and they did not oppose judicial notice of those materials.

II.    *Initial resentencing proceedings*

In 2023, the trial court recalled Small's sentence under section 1172.75 and struck the one-year prior prison term enhancement, thereby reducing his aggregate sentence to 38 years four months in state prison. The court scheduled a future hearing to conduct a full resentencing.

III.    *RJA discovery motion*

Small filed a motion for disclosure of information under the RJA. (§ 745(d).) He was represented by an attorney from the public defender's office. Small argued that the requested records were relevant to prove a violation of section 745(a)(3). The motion sought the following categories of information from the district attorney's office for the years 2003 through 2010: (1) lists of everyone arrested for violating section 269 or section 288 and everyone charged with violating those provisions, along with each person's age, gender, race, ethnicity, and national origin; (2) any offers made by the prosecution to any person charged with violating section 269 or section 288; (3) any written material in the district attorney's office reflecting the reasons for the charging decision and the disposition for each offense; and (4) "[a]ny reason stated or provided by any member of the Riverside County District Attorney's Office or policy relied upon in making the decision to charge James Small." Small also sought copies of any associated police reports and rap sheets.

4

The following exhibits were attached to the motion: (1) a printout from the website www.indexmundi.com stating that the African Americans were between 6 and 7.5 percent of Riverside County's population from 2000 to 2009; (2) a printout from the United States Census Bureau's website providing "Quick Facts" about Riverside County, showing African Americans to be 7.6 percent of the population at some unspecified time[2]; (3) two pages of a 2021 report from the Judicial Council of California (the Judicial Council), stating that in 2020 African Americans were 5.5 percent of California's population but were 18.9 percent of California's felony defendants; and (4) several copies of reports printed from a website called the Racial Justice Act Tool, which is maintained by an organization called the Paper Prisons Initiative. The exhibits were attached to the motion without any accompanying declaration.

The Paper Prisons Initiative describes itself as "a multi-disciplinary research initiative focused on documenting and narrowing the 'second chance gap' between eligibility for relief from the criminal justice system and its delivery due to hurdles in access to relevant information and data." Its website "provides summary data representing the raw numbers, rates per population, and disparity gaps by race of adults in the California criminal justice system using data provided by the California Department of Justice as well as by the Census Department."

---

[2] Some of the statistics in the "Quick Facts" are accompanied by dates, but there is no date accompanying the data concerning the racial composition of the county's population. In his motion, Small asserted that the United States Census Bureau statistics were taken from July 1, 2023.

The reports printed out from the Paper Prisons Initiative's Racial Justice Act Tool cover the period 2010-2021 and compare the per capita rates for African Americans in Riverside County of arrests, court actions, convictions, incarceration, and sentences for violations of sections 269, subdivision (a)(1), 288, subdivisions (a), (b)(1), and (c)(1), with the same rates for the county's White population. The reports state that African Americans' rates for each variable of each offense (from arrest through sentencing) are higher than the rates for Whites.

The printouts state that the source of the underlying data "is a comprehensive dataset of arrests, court actions, convictions, and sentences in California, the Criminal Offender Record Information (CORI) database, available to researchers through the California Department of Justice Automated Criminal History System (ACHS) under the provisions of the CA DOJ Research Data Request Process." The printouts state that the CORI dataset "is not without limitations," for at least the following reasons: "Among the known disadvantages of the CORI data are that it does not include systematic information on the conditions of the arrest (such as whether or not a weapon was present) or other aspects of the defendant's conduct which might influence the evaluation of the 'similar conduct' under the RJA statute." The printouts also include the following general disclaimer: "This tool is intended to help you access and analyze criminal justice data and identify potential racial disparities for counties across California and the state as a whole. The tool and the accompanying data are provided as a public service 'as-is', and do not constitute legal advice or 'official proof' of actionable disparity or lack thereof."

The district attorney's office opposed the discovery motion, arguing that Small failed to demonstrate good cause. The district attorney argued that general statistical information alone without reference to similarly situated defendants engaged in similar conduct does not establish a plausible violation of the RJA. The district attorney attached the complete 2021 Judicial Council report to its opposition, highlighting that the report included the finding that "[w]hen controlling for age, gender, county, and legal factors, differences in prison sentence lengths across racial groups were not significant." As to the county-specific data in the printouts from the Racial Justice Act Tool, the district attorney argued that the data constituted unreliable hearsay that was generated by an advocacy group. The district attorney also argued that application of the factors set forth in *City of Alhambra v. Superior Court* (1988) 205 Cal.App.3d 1118 (*Alhambra*)—the *Alhambra* factors—warranted denying the requested discovery, because Small failed to demonstrate that he had attempted to obtain any relevant information readily available to him through other sources, such as the public defender's office.

At the hearing, the court stated that it had reviewed the parties' filings, the exhibits attached to Small's motion, and what were then the only published cases addressing the good cause requirement under section 745(d), *Young v. Superior Court* (2022) 79 Cal.App.5th 138 (*Young*) and *Gonzales v. Superior Court* (2024) 108 Cal.App.5th Supp. 36 (*Gonzales*). The court explained that the standard for discovery under section 745(d) is "very low" and that Small could establish good cause by showing a plausible violation of section 745(a)(3). Defense counsel argued that the countywide, offense-specific data

in the printouts from the Racial Justice Act Tool were "the most relevant" data demonstrating a plausible violation of the RJA, describing that data as "more on point than the statewide" data. The district attorney reiterated the arguments from their written opposition, asserting that the court should give "very little" weight, "if any," to the printouts from the Racial Justice Act Tool. In response, the court noted that the district attorney had "a hill to climb to completely discredit this such that I can give it no weight at all."

After hearing the parties' arguments, the court found that Small had "made at least a minimal showing of a plausible scenario for a claim as it relates to disparity of prosecution under 745(a)(3)." The court's determination was based on "the whole of the statistics that were cited by" defense counsel. When the district attorney asked for clarification about the specific data that the court relied on, the court replied: "The statistical information that was provided through the defense exhibits— [¶] . . . as a whole, without parsing each item or finding that they are proof beyond a reasonable doubt." Upon further questioning, the court reiterated: "I said it's all of it," and "[t]he Appellate Court can know that I relied upon all the statistics that were provided."

The trial court ordered the district attorney to provide the defense with a list of all individuals referred to the district attorney's office for prosecution of a violation of either section 269 or section 288 from January 1, 2006, through December 31, 2010. For each listed individual, the court ordered the district attorney to provide the following information: (1) identifying information, such as name, birthdate, gender, race, ethnicity,

8

and national origin; (2) the investigating agency, the agency's report number, and copies of any reports still in the district attorney's possession; (3) an indication of whether the case was filed and, if filed, the charges brought and the superior court case number; and (4) any rap sheets within the district attorney's possession. The court explained that the district attorney was not obligated to "hunt these things down from other agencies" but was expected "to do a due diligent search within their own records to locate any investigative reports."

As to the issue of whether the public defender should be required to search through its own records before seeking discovery from the district attorney, the court noted that such a search would have made its decision on the motion "easier." But the court reasoned that it was not prepared to require such a search before ordering disclosure from the district attorney. Moreover, the court found that "the public defender would not have any information with regards to cases that were rejected. It would not have information on cases that involve private counsel or conflict counsel defendants. So this isn't something that's—they can get otherwise but through the DA's office." The court set a status hearing several months later.

IV.  *The district attorney's motion for reconsideration*

Before the scheduled hearing, the district attorney moved for reconsideration. The district attorney argued that new case law—*McDaniel v. Superior Court* (2025) 111 Cal.App.5th 228 (*McDaniel*)—warranted reconsideration of the good cause finding under section 745(d). *McDaniel* agreed with *Young* and *Gonzales* that parties seeking discovery

9

under section 745(d) "only need to show plausibility based on 'specific facts'"—"a low threshold"—and reasoned that those specific facts could be case-specific facts, "statistical facts relevant to the charges and individuals involved," "[o]r both." (*McDaniel*, at p. 244.) The court observed that "some review of statistical data" was warranted "even at the discovery stage," but the court cautioned that "if the statistical data demonstrates an actual racial disparity in the charging decisions of the county, weaknesses in the data pool or concerns about additional data points do not necessarily negate the plausible factual foundation that an RJA violation 'could or might have occurred.'" (*Id.* at p. 246) *McDaniel* concluded that the defendant had shown good cause for discovery under section 745(d) on the basis of evidence that included (1) "county-specific data suggestive of a disparity between the racial composition of San Mateo County and the racial composition of those charged with gang or gang enhancement charges" and (2) "an expert declaration evaluating charging and incarceration rates and concluding that available data indicates 'some actual disparity.'" (*McDaniel*, at pp. 245-246.) The district attorney argued that the evidence submitted by Small was far less probative than that submitted in *McDaniel*, noting in particular that unlike the defendant in *McDaniel*, Small had not submitted an "expert declaration or analysis of any kind describing the relevance or significance of the statistical evidence."

In addition to seeking reconsideration in light of *McDaniel*, the district attorney urged the court to reconsider its good cause finding because of new evidence that the district attorney submitted concerning the unreliability of the Racial Justice Act Tool.

The district attorney had run inquiries about attempted murder using that website and found it "produced grossly inaccurate" data. (Underlining omitted.) The Racial Justice Act Tool reported that there had been no attempted murder court actions, convictions, or sentences from 2010 to 2021.

The district attorney also argued that the discovery that the court ordered would be unduly burdensome, given the record review that the district attorney's office had already undertaken in response to the order. The district attorney attested that there were approximately 1,619 cases potentially responsive to the discovery order. The district attorney submitted a declaration from an attorney at the district attorney's office who described the limitations of the office's case management system and some difficulties with finding all of the information that the court had ordered disclosed. The district attorney argued that "the case-by-case 'due diligence' search for agency reports and RAP sheets would be prohibitively and unduly burdensome—whether this search is conducted electronically or through a[] physical search of the records." In addition, the district attorney renewed its argument that the information was readily available to Small through other sources, namely, the public defender's records.

At the hearing, the trial court denied the request to reconsider its good cause finding in light of *McDaniel*. The court reasoned that *McDaniel* had not "really change[d] anything" and was consistent with prior law. The court found it insignificant that Small had not produced an expert to satisfy the "most minimal showing necessary" under section 745(d). In denying that portion of the motion, the court also stated: "I

11

would acknowledge that this particular Court used primarily, if not exclusively, statewide statistical information to make my initial good cause finding. [¶] There is no case that says you can't do that."

But the trial court otherwise granted the district attorney's motion and limited the information that the district attorney had to produce. The court maintained the prior order requiring the district attorney's office to provide Small with a list of all individuals referred to the district attorney's office for prosecution of a violation of either section 269 or 288 from January 1, 2006, through December 31, 2010 (the 1,619 cases). But the court limited the information that the district attorney was required to disclose to: (1) the individual's name, gender, race, ethnicity, and national origin, and (2) the investigating agency and agency report number. The court allowed the district attorney to exclude any juvenile records. The court found that, given the information that the district attorney's office had already collected, it could "relatively easily provide" the relevant information. The court found that production of the additional information required by the court's original order would be unduly burdensome.

The district attorney subsequently filed this petition for writ of mandate, challenging the trial court's finding of good cause and failure to require the public defender to search its own records before seeking disclosure from the district attorney's office. We issued an order to show cause and stayed the proceedings in the superior court pending further order of this court.

12

DISCUSSION

I.    *The RJA*

"The Legislature passed the RJA in 2020 with a stated aim 'to eliminate racial bias from California's criminal justice system' and 'to ensure that race plays no role at all in seeking or obtaining convictions or in sentencing.'" (*People v. Wilson* (2024) 16 Cal.5th 874, 944-945.) To that end, the RJA provides that "[t]he state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) One way to establish a violation is by proving that "[t]he defendant was charged or convicted of a more serious offense than defendants of other races, ethnicities, or national origins who have engaged in similar conduct and are similarly situated, and the evidence establishes that the prosecution more frequently sought or obtained convictions for more serious offenses against people who share the defendant's race, ethnicity, or national origin in the county where the convictions were sought or obtained." (§ 745(a)(3).)

If a defendant believes that a violation of the RJA has occurred, they "may file a motion requesting disclosure to the defense of all evidence relevant to a potential violation of subdivision (a) in the possession or control of the state." (§ 745(d); *McDaniel, supra*, 111 Cal.App.5th at p. 240.) "Upon a showing of good cause, the court shall order the records to be released."[3] (§ 745(d).)

---

[3]     On October 13, 2025, the Governor signed into law two bills that amend section 745 and other provisions of the RJA, effective January 1, 2026: Senate Bill No. 734 (2025-2026 Reg. Sess.) and Assembly Bill No. 1071 (2025-2026 Reg. Sess.). No

*[footnote continued on next page]*

The RJA does not define the term "good cause." (§ 745(d); see also *id.*, subd. (h).) In 2022, *Young* held that the discovery standard in the RJA is similar to the "'relatively relaxed'" good cause standard that governs disclosure of law enforcement personnel records under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 535-537. (*Young, supra,* 79 Cal.App.5th at pp. 158-159; *id.* at pp. 158-161.) Drawing on the *Pitchess* standard, *Young* "conclude[d] that in order to establish good cause for discovery under the Racial Justice Act, a defendant is required only to advance a plausible factual foundation, based on specific facts, that a violation of the Racial Justice Act 'could or might have occurred' in this case." (*Young*, at p. 159, quoting *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1016.) *Young* held that the good cause standard under section 745(d) is "even more relaxed than" the *Pitchess* standard in the following respects: A defendant seeking discovery under section 745(d) need not provide "an affidavit setting forth a reasonable belief that the requested discovery is material to the subject matter of the case" or "'propose a defense or defenses to the pending charges' and a 'logical link between the defense proposed and the pending charge.'" (*Young*, at p. 159.) The limiting factor for the RJA good cause finding "is 'relevance' in the discovery sense—that is, each request for disclosure must be reasonably calculated to lead to discovery of admissible evidence probative of a section 745, subdivision (a) violation." (*Young*, at p. 160.)

changes were made to section 745(a)(3), and no material changes were made to section 745(d). (Assem. Bill No. 1071, § 2.) Uncodified legislative findings state that the Legislature "intend[ed] that individuals must be afforded access to a broad range of relevant discovery to develop and support their potential RJA claims. Otherwise, they are left in the impossible position of having their claims rejected for want of the very data they seek. This is antithetical to the RJA." (Assem. Bill No. 1071, § 1(b).)

14

The "showing of plausible justification is merely a threshold consideration." (*Young*, *supra*, 79 Cal.App.5th at p. 144.) A court analyzing whether a defendant can obtain discovery of the requested material also "'must consider and balance'" the *Alhambra* factors. (*Young*, at p. 144; *McDaniel*, *supra*, 111 Cal.App.5th at p. 248.) Those factors are: "(1) [W]hether the material requested is adequately described, (2) whether the requested material is reasonably available to the governmental entity from which it is sought (and not readily available to the defendant from other sources), (3) whether production of the records containing the requested information would violate (i) third party confidentiality or privacy rights or (ii) any protected governmental interest, (4) whether the defendant has acted in a timely manner, (5) whether the time required to produce the requested information will necessitate an unreasonable delay of defendant's trial, (6) whether the production of the records containing the requested information would place an unreasonable burden on the governmental entity involved and (7) whether the defendant has shown a sufficient plausible justification for the information sought."[4] (*Alhambra*, *supra*, 205 Cal.App.3d at p. 1134; *Facebook, Inc. v. Superior Court (Touchstone)* (2020) 10 Cal.5th 329, 345-347.)

---

[4] Since *Young*, the Legislature has not amended the good cause requirement in section 745(d) or defined "good cause" for purposes of the RJA. (See, e.g., Assem. Bill No 1071, § 2.) If "'a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it.'" (*Donorovich-Odonnell v. Harris* (2015) 241 Cal.App.4th 1118, 1132.)

We review the trial court's discovery order for abuse of discretion, "'because management of discovery lies within the sound discretion of the trial court.'" (*Young*, *supra*, 79 Cal.App.5th at p. 156.) "We review the factual underpinnings of a discretionary determination for substantial evidence [citation], but where such a determination rests on 'incorrect legal premises,' our review is de novo [citations]." (*Ibid.*)

II.     *Good cause*

The district attorney contends that the trial court erred by concluding that Small established good cause under section 745(d). In particular, the district attorney argues that the trial court erred by (1) relying "'primarily, if not exclusively'" on statewide statistical data that "did not relate to similarly situated individuals engaged in similar conduct, as required by the RJA," and (2) not reconsidering the discovery order in light of *McDaniel*, because *McDaniel* requires that a movant provide more than just statewide statistical data to establish good cause under section 745(d). Both arguments assume that the trial court's good cause finding was based solely on "statewide statistical evidence."

The arguments fail because they are based on a false premise. At the hearing on Small's discovery motion, the trial court expressly and repeatedly stated that its good cause finding was based on all of the evidence that Small submitted in support of his motion. That evidence included the Riverside County data generated by the Paper Prisons Initiative's Racial Justice Act Tool, which compared the rates of arrests, court actions, convictions, incarceration, and sentences of the African American and White

16

populations in the county for violations of section 269, subdivision (a)(1), and section 288, subdivisions (a), (b)(1), and (c)(1), between 2010 and 2021. The record thus demonstrates that the trial court did not rely solely on generic statewide statistics in finding that Small established good cause under section 745(d).[5] (Cf. *People v. Superior Court (Lalo)* (2025) 114 Cal.App.5th 707, 714-715 [concluding that "statewide statistics" alone are not sufficient to establish good cause under section 745(d)].)

To support the contrary proposition, the district attorney points out that at the hearing on the district attorney's reconsideration motion, the trial court stated that it had previously relied "primarily, if not exclusively, [on] statewide statistical information to make my initial good cause finding." Relying on that comment alone, the district attorney contends that the trial court erred by basing its finding of good cause solely on statewide statistical evidence. Drawing all reasonable inferences in favor of the correctness of the trial court's order (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1046), we interpret the trial court's phrase "primarily, if not exclusively" to mean "primarily but not exclusively." That interpretation is supported by the fact that the trial court was describing its previous ruling, and the reporter's transcript of the prior hearing demonstrates unequivocally that the court relied on all of Small's evidence, not just the statewide data. We accordingly conclude that the record does not support the district

---

[5]  In the writ petition, the district attorney does not challenge the trial court's reliance on the data provided by the Racial Justice Act Tool. We accordingly express no opinion on whether the printouts generated from that website have any probative value.

17

attorney's contention that the trial court relied exclusively on statewide statistical data in finding that Small established good cause to warrant disclosure under section 745(d).

Because the record demonstrates that the trial court did not rely exclusively on statewide statistics in finding that Small established good cause under section 745(d), the district attorney's arguments assuming such exclusive reliance lack merit.

III.     Alhambra *factors*

A party can oppose disclosure under the *Alhambra* factors "by establishing that, for example, the [party seeking discovery] can obtain the *same information* by other means, or that the burden on the [party from whom discovery is sought] is not justified under the circumstance." (*Facebook, Inc. v. Superior Court* (*Hunter*) (2018) 4 Cal.5th 1245, 1290 (*Hunter*).)  The district attorney argues that in weighing the *Alhambra* factors, the trial court abused its discretion by "excusing Small from reviewing readily available information before compelling disclosure."  We disagree.

At the initial hearing on the discovery motion, the trial court declined to compel the public defender to conduct such a search before the court ordered disclosure from the district attorney's office.  The court reasoned that the information it had ordered disclosed included information that would not be readily available to Small or in the files of the public defender's office, such as cases in which the defendant had private counsel or conflict counsel.  In modifying the discovery order, the court again did not compel the public defender's office to search through its own records before the court compelled disclosure by the district attorney's office.  That was not an abuse of discretion.  The

18

district attorney did not provide any information about who represented the individuals in the 1,619 cases that the district attorney had already identified as responsive to the court's order. The district attorney thus did not proffer any evidence countering the trial court's previous finding that the information available to Small from the public defender's office would not be the same as the information that could be obtained from the district attorney's office. (See *Hunter*, *supra*, 4 Cal.5th at p. 1290.)

Moreover, by the time of the hearing on the reconsideration motion, the district attorney had already completed an extensive search of its records to respond to the initial discovery order and had already identified the list of responsive cases. It was not unreasonable for the trial court not to compel Small at that stage to seek similar information from the public defender's office before the court compelled the district attorney to comply with the modified order, given the efforts already undertaken by the district attorney's office to comply with the initial order.

Given that the trial court could reasonably infer that Small could not obtain the same information from the public defender's office, and given the efforts already undertaken by the district attorney's office to comply with the initial discovery order, we cannot say that the trial court abused its discretion when it declined to require Small to obtain readily available information from the public defender's office before the court ordered disclosure from the district attorney's office.

## DISPOSITION

The petition is denied.  The stay of proceedings in the superior court is lifted.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

RAMIREZ
P. J.

MILLER
J.